IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNIVERSAL UNDERWRITERS<br>INSURANCE COMPANY,<br>　　　　　　Plaintiff | : <br> : <br> : <br> : | No. 3:21cv259 <br><br> (Judge Munley) |
| v. | : : : : | |
| JOHN SWENSON,<br>　　　　　　Defendant | : : : | |

## MEMORANDUM

Before the court for disposition is Plaintiff Universal Underwriters Insurance Company's ("UUIC") motion for summary judgment in this insurance declaratory judgment action. The parties have briefed their respective positions, and the motion is ripe for decision.

**Background**

Kress Auto Wreckers (hereinafter "Kress") employed Defendant John Swenson as a truck driver. (Doc. 24, Def.'s Br. at 1; Doc. 11, Def.'s Ans. ¶ 28). Defendant was involved in a head-on motor vehicle accident on September 12, 2008, while operating a vehicle owned by his employer, Kress. (Doc. 1, Compl. ¶¶ 5, 34; Doc. 13, Case Management Plan ¶ 1.1). In the accident, defendant suffered significant personal injuries resulting in a medical lien in excess of $250,000. (Doc. 13, Case Management Plan ¶1.1). The accident occurred

while defendant was acting within the scope of his employment. (Id.)

UUIC is in the insurance business and in 2007 sold Kress an insurance policy that covered garage operations, UUIC Policy No. 266118-B. (Doc. 1, Compl. ¶ 1, Doc. 18, Statement of Uncontested Material Facts "SOF" at ¶ 3). The policy also insured Kress's fleet of vehicles related to the business, including the vehicle involved in the above-mentioned automobile accident. (Id. ¶ 27). Kress renewed the policy in 2008 as UUIC Policy 266118-C. (Doc. 18 ¶ 12). This policy was in effect at the time of the accident. (Id.)

A third party bore responsibility for the accident and this party's insurer paid the applicable policy limit of $100,000 to defendant. (Doc. 13, Case Management Plan at ¶ 1.1). Defendant then requested Underinsured Motorist ("UIM") coverage from plaintiff. (Id.) Plaintiff offered $35,000, which it claims is the policy limit. (Id.) Defendant, however, claims the limit is $300,000, with possible stacking. (Id.) The parties eventually agreed to file a declaratory judgment action to determine the applicable UIM policy limit. (Id.)

This declaratory judgment action followed. (Doc. 1). At the close of discovery, plaintiff moved for summary judgment. The parties have briefed their respective positions, bringing the case to its present posture.

**Jurisdiction**

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332 ("district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states[.]" Complete diversity of citizenship exists between plaintiff and defendant and the amount in controversy exceeds $75,000.00. (Doc. 1, Compl. ¶ 3; Doc. 11, Ans. ¶ 3).[1] As a federal court sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tomkins, 304 U.S. 64, 78 (1938)).

**Legal Standard**

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" See Knabe v. Boury Corp., 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

---

[1] Plaintiff is a citizen of Illinois, and defendant is a citizen of Pennsylvania. (Doc. 1, Compl. ¶¶ 1-2).

summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248. A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

The issues in this insurance declaratory judgment action are: 1) what is the

4

available UIM coverage; and 2) is stacking available under the applicable UIM coverage. The court will address these two issues separately.

**I. UIM Coverage**

The first issue the court will address is the UIM coverage limit. Plaintiff argues that the limit of UIM benefits is $35,000, and defendant argues that the limit is $300,000.

In April 2008, Kress executed a renewal of its insurance policy with plaintiff, UUIC Policy 266118-C, effective July 1, 2008 – July 1, 2009. (Doc. 18, SOF at ¶ 12). The policy provides that "Underinsured Motorist Coverage (UIM) is an optional coverage. However, we are required to provide this coverage unless you reject it. . . .Pennsylvania insurance regulations require insurers to provide Underinsured Motorist limits equal to your automobile liability limits. However, for a reduction in premium you may elect lower Underinsured Motorists Limits." (Doc. 18-5, Exh. E, Ins. Policy UIM Elective Options Form)

Beneath this explanation is a box which states: "Underinsured Motorist Bodily Injury is provided at the same coverage limits as your Automobile Liability, in exchange for a lower premium, the named Insureds or applicants may request in writing, an amount of coverage less than the limits of liability for bodily injury but not less than $35,000[.]" (Id.) Following this statement is a grid with space for the policyholder to check off boxes and indicate the amount of insurance they

seek and who is covered by the insurance. The grid indicates that Kress, the policyholder, chose the limit of $35,000 regarding "BASIC AUTO" coverage. Additionally, the policyholder wrote, under other limits, "300,000" regarding "Designated Individuals." (Id.) An area is provided to list the "Designated Individuals." This area, however, is left blank. (Id.)

The law provides that in an insurance coverage dispute such as this, the "insured bears the initial burden to make a prime facie showing that a claim falls within the policy's grant of coverage, but if the insured meets that burden, the insurer then bears the burden of demonstrating that a policy exclusion excuses the insurer from providing coverage if the insured contends it does." State Farm Fire and Cas. Co. v. Est. of Mehlman, 589 F.3d 105, 111 (3d Cir. 2009) (applying Pennsylvania law).

The parties do not dispute that defendant, as an employee of Kress, is covered under the insurance policy.[2] The question, therefore, is the amount of UIM coverage applicable to defendant.

Plaintiff's argument here is that the insurance policy is clear and

---

[2] Here the policy defines "insured" as follows:
" 'INSURED' " means any person or organization qualifying as an INSURED in the Who Is An Insured provision of the coverage part." (Doc. 2, Pl. Exh. A at 7). With regard to "Who is an insured" the policy provides: "With respect to LOSS under this coverage part: A. YOU. B. YOUR partners, paid employees, directors, executive officers, and stockholders while acting within the scope of their duties as such with respect to a CUSTOMER'S AUTO or CUSTOMER'S WATERCRAFT."
(Id. at 15).

6

unambiguous. The UIM coverage generally provided in the policy at issue is $35,000, but it provided $300,000 for designated individuals. Defendant is not listed as a "designated individual" in the policy. Thus, he is not entitled to the $300,000 coverage. Rather, the coverage available to defendant is the general limit of $35,000.

Defendant is not listed as a "designated individual" who would be eligible for the $300,000 coverage limit. In fact, no one is listed as a designated individual in the policy. Defendant's argument seems to be that because no one is listed in the policy as a "designated individual" then anyone employed by the company, including him, would be entitled to the higher limits. Evidently, the defendant argues that the policy is ambiguous and should be interpreted in his favor.

Under Pennsylvania law, when a court interprets an insurance policy, (1) the terms of the insurance policy must be given their ordinary meaning; (2) a term is ambiguous only if reasonably intelligent people considering the term in the context of the entire policy would honestly differ as to its meaning; and (3) the parties' intent must be determined not only from the language but from all of the circumstances. Medical Protective Co. v. Watkins, 198 F.3d 100, 103–04 (3d Cir.1999).

The Pennsylvania Superior Court has explained the interpretation of

7

insurance contract language as follows:

> In examining the language of an insurance policy, we are mindful that "[w]hile any ambiguities in an insurance contract will be resolved in favor of the insured, a court is required to give effect to clear and unambiguous language." Coppola v. Insurance Placement Facility of Pa., 386 Pa.Super. 413, 563 A.2d 134, 136 (1989) "Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. We will not, however, distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity. The polestar of our inquiry, therefore, is the language of the insurance policy."
> Neuhard v. Travelers Ins. Co., 831 A.2d 602, 605 (Pa. Super. 2003) (citation omitted). "Additionally, an ambiguity does not exist simply because the parties disagree on the proper construction to be given a particular policy provision. Courts should read policy provisions to avoid an ambiguity if possible." Id. (citations and quotation marks omitted).

Estate of Higgins ex rel. Higgins v. Washington Mut., 838 A.2d 778, 781-82 (Pa. Super. Ct. 2003).

After a careful review, the court finds no ambiguity in the policy. It provided coverage higher than $35,000 for designated individuals, and defendant is not listed as a designated individual. The fact that no one is listed as a designated individual does not make the contract ambiguous such that all employees should be eligible for the higher coverage. The defendant has cited no authority for such a conclusion, and the court's research has uncovered none. Thus, summary judgment will be granted to the plaintiff on this point. The court will issue a

declaratory judgment that defendant is entitled to UIM coverage of $35,000 under the policy.

## II. Stacking

The second issue raised by plaintiff's summary judgment motion is whether "stacking" applies to the defendant's insurance claim. "Stacking" refers to the practice of combining the insurance coverage of individual vehicles to increase the amount of total coverage available to an insured. Gallagher v. GEICO Indem. Co., 201 A.3d 131, 132 n.1 (Pa. 2019). As noted above, the policy at issue covered the Kress's fleet of cars. The law provides that stacking of Uninsured or UIM Coverage is not mandated by the Pennsylvania Motor Vehicle Financial Responsibility Law for a commercial fleet policy such as that at issue. Everhart v. PMA Ins. Grp., 938 A.2d 301, 302 (Pa. 2007). Mandatory stacking under such policies would lead to prohibitive insurance premium costs. Id. at 306. An insurance company and insured can, however, contract for stacking if they so choose.

Plaintiff points out that the policy at issue does not provide for stacking. In fact, plaintiff rejected stacking. Specifically, under the heading "Pennsylvania Underinsured Coverage Limits" the policy provides:

> By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead

9

the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily rejected the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

(Doc. 18-2 at 10).

Defendant makes no cogent argument that stacking does apply here. A review of the policy reveals that stacking is not provided for, and plaintiff specifically rejected stacking. Accordingly, declaratory judgment will be granted to the plaintiff on the issue of stacking.

**Conclusion**

For the reasons set forth above, the plaintiff's motion for summary judgment will be granted. The amount of UIM coverage available to defendant for the injuries and damages suffered as a result of the motor vehicle accident under the subject Policy is $35,000, and stacking is inapplicable. An appropriate order follows.

Date: 4/18/24

JUDGE JULIA K. MUNLEY
United States District Court